

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: CARDIZEM CD ANTITRUST
LITIGATION,

Master File No. 99-md-1278
MDL No. 1278

THIS DOCUMENT RELATES TO:
ALL ACTIONS,

Honorable Nancy G. Edmunds

_____/

## ORDER NO. 31
### MODIFYING MAGISTRATE JUDGE'S SEPTEMBER 26, 2001 ORDER REGARDING PLAINTIFFS' MOTION TO COMPEL OR PRECLUDE EVIDENCE AT TRIAL

This matter comes before the Court on Plaintiffs' objection to and appeal of the Magistrate Judge's September 26, 2001 opinion and order denying Plaintiffs' motion to compel or preclude evidence at trial. The Magistrate Judge denied Plaintiffs' motion, finding that, on the current record, Andrx had not disclosed any substantive information obtained from its patent counsel in connection with the HMRI/Andrx patent infringement action, and therefore had not waived the attorney-client privilege as to those communications. The Magistrate Judge further observed, however, that: "[s]hould additional discovery reveal that reliance on the advice of counsel concerning the infringement is a primary defense in this case, then perhaps a finding of waiver might be appropriate." Mem. Opin. & Order at 5.

Plaintiffs do not object to the Magistrate Judge's conclusion that Defendant Andrx has not yet waived the attorney-client privilege as to these patent counsel communications. Rather, they focus on the latter part of the Magistrate Judge's ruling and argue that,

contrary to law, it unfairly prejudices Plaintiffs by creating a situation where Defendant Andrx has the opportunity to shield itself by asserting the attorney-client privilege until the discovery cutoff date has passed and then subsequently waiving the privilege by asserting arguments, either in a dispositive motion or at trial, that put these communications "at issue"; i.e., by arguing that the "biggest reason" it did not enter the market in mid-1998 was its fear of patent infringement liability to HMRI.[1]

Plaintiffs observe that Defendant Andrx has repeatedly argued, as a defense to causation, that its fear of being subject to a treble-damage judgment for willful infringement (rather than the illegal HMRI/Andrx Agreement) caused it to stay off the market in mid-1998. Andrx refines that causation defense in its Opposition Brief here. It argues that, although it wanted to get its generic product to market fast, it needed to do so prudently. Thus, Andrx argues, it's "business decision", based on its "precarious financial condition" and the fear of a treble-damage judgment for patent infringement, caused it to delay entry into the market. "Andrx knew that it would risk financial disaster by launching a potentially illegal product during the Patent Litigation." Andrx Opposition Brief at 6.

In light of Andrx's causation defense, Plaintiffs' assert, the critical factor is not whether Andrx actually relied on its patent lawyers' advice in deciding whether to enter the market

---

[1] Plaintiffs support this contention with 9/25/01 deposition testimony from Andrx's Chief Financial Officer that "[t]he biggest reason" Andrx would not have entered the market in mid-1998 was its alleged fear of patent liability to HMRI. See Plaintiffs' Obj., Ex. 1, 9/25/01 A. Malahias Dep. at 20-21.

Plaintiffs provide further support with testimony of Scott Lodin, Andrx's general counsel, before the FTC that Andrx's assessment of its patent risk was a critical factor in its decision whether to go to market while the patent infringement action was pending. See Ps' Reply at 5, quoting testimony of Scott Lodin in *In re Andrx Corp. and Hoechst Marion Roussel* (FTC Docket No. 9810368) at 209-210.

in mid-1998. Rather, the critical facts that Defendant Andrx puts at issue here concern the basis for Andrx's alleged fear of a treble-damage judgment for patent infringement. Andrx is willing to allow discovery of information regarding its financial condition in mid-1998 but not information regarding the additional critical factor supporting its "business decision" that it was too risky to enter the market in mid-1998; i.e., its fear of patent liability.[2] To allow Andrx to present this "causation" argument either in a dispositive motion or at trial after the close of discovery, Plaintiffs argue, would be unfair and contrary to law.  This Court agrees. *See United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999) (observing that the attorney-client privilege may be implicitly waived where "a party raises a claim which in fairness requires disclosure of the protected communication"); *Belmont Textile Mach. Co. v. Superba, S.A.*, 48 F. Supp. 2d 521, 523 (W.D. N.C. 1999) (giving defendant ten days to elect whether to assert non-willfulness defense in patent case and waive attorney-client privilege or withdraw the defense and retain the privilege).

Plaintiffs are not asking this Court to overturn Magistrate Goldman's ruling that Andrx has not yet waived the attorney-client privilege nor are they insisting that Andrx waive its privilege. Rather, they argue that the facts and the law support their request that, in fairness, if Andrx does not waive its attorney-client privilege before discovery is completed, Andrx should be precluded from presenting a causation defense, either at the summary judgment or trial stage, that has as its basis an alleged fear of patent liability.  In other

---

[2] Plaintiffs claim that it is undisputed that Andrx has in its possession two opinion letters from patent counsel concerning the HMRI/Andrx Patent Litigation. Plaintiffs apparently believe that discovery of Andrx's patent counsel communications in connection with the HMRI/Andrx patent litigation will provide them with evidence refuting Andrx's claim that fear of patent liability was the reason it delayed entry into the market.

3

words, after the close of discovery, Andrx should not be permitted to use its fear of a treble damage judgment for patent liability as a sword to attack Plaintiffs' causation arguments while simultaneously using that attorney-client privilege as a shield to prevent Plaintiffs' from discovering facts concerning the basis of Andrx's alleged fear. A recent decision by the Ninth Circuit Court of Appeals supports this result. *See United States v. Amlani*, 169 F.3d 1189 (9th Cir. 1999).

In *Amlani*, the defendant was convicted of conspiracy to commit and the commission of wire fraud and was subsequently sentenced. On appeal, he argued "that the government deprived him of his Sixth Amendment right to counsel when the prosecutor intentionally undermined [defendant]'s confidence in his chosen counsel... by disparaging [that counsel] in front of [defendant]." *Id.* at 1191. The defendant further alleged that the disparaging comments caused him to fire his chosen counsel and to hire new, inexperienced counsel, and this resulted in his "unusually high" sentence. *See id.* The appellate court remanded the case to the district court with instructions to hold a hearing to determine whether the government did in fact disparage defendant's counsel in his presence and, if so, whether this disparagement caused the defendant "to retain difference counsel". *Id.*

On remand, the district court agreed with the government's argument that the defendant "had implicitly waived the privilege by asserting the disparagement claim" thus allowing discovery of privileged documents and conversations. *Id.* The defendant appealed, and the Ninth Circuit affirmed finding that "[the defendant] cannot assert that certain factors <u>caused</u> him to discharge his attorney and then invoke the attorney-client privilege to prevent the government from examining the situation further." *Id.* at 1195

4

(emphasis added). The *Amlani* Court also rejected the defendant's claim that alternative sources of evidence existed that allowed the government to dispute his disparagement claim. It observed that, without access to the privileged communications, the government would have to rely "almost exclusively" on the defendant's characterization of events and further observed that fairness dictated otherwise. *See id.* at 1195-96. "In fairness", the Court observed, the government must have access to the defendant's communications with his counsel "to determine whether in fact the disparaging comments <u>caused</u> the substitution of counsel." *Id.* at 1196 (emphasis added). Accordingly, the Court held that the defendant "'cannot invoke the attorney-client privilege to deny [the government] . . . access to the very information that [the government] . . . must refute in order to demonstrate that" [the defendant] did not discharge [his original counsel] because of the prosecutor's allegedly disparaging statements." *Id.* at 1196 (quoting *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1163 (9th Cir. 1992)). *Accord, In re Kidder Peabody Securities Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996) (observing that "[t]he waiver may be found even if the privilege holder does not attempt to make use of a privileged communication; he may waive the privilege if he makes factual assertions the truth of which can only be assessed by examination of the privileged communication.")

As Andrx acknowledges, the attorney-client privilege is waived whenever the privilege holder "puts the privileged information at issue" though an "affirmative act," and "allowing the privilege would deny the opposing party access to information vital to its defense." Andrx Opposition Br. at 7 (quoting *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995)). An argument by Andrx, at the summary judgment stage or at trial, that fear of patent liability (along with Andrx's alleged precarious financial condition),

5

rather than the HMRI/Andrx Agreement, caused Andrx to stay off the market in mid-1998, would satisfy these requirements. Accordingly, it should not be allowed to use the attorney-client privilege as a shield for its patent counsel's infringement analysis while discovery is ongoing, only to turn around at summary judgment or trial and advance a causation defense that its fear of patent infringement liability (and treble damages) caused it to delay entry into the market. If Andrx chooses to assert the causation defense it raises here, it cannot, in fairness, deny Plaintiffs access to the very information they must refute in order to show that Andrx's fear of patent liability was not the cause of its delayed market entry. See Amlani, 169 F.3d at 1196. This Court concludes that, should Andrx choose to rely on that causation defense, it will place at issue the advice it received from its patent counsel as to the likely outcome of the HMRI/Andrx patent litigation and will thus waive its privilege.

Accordingly, this Court modifies the Magistrate Judge's September 26, 2001 Order, and orders Defendant Andrx to inform the Court within 45 days from the date of this Order whether it will waive or maintain a claim of privilege with respect to the advice it received from its patent lawyers.[3] Absent a waiver of its privilege, this Court will grant Plaintiffs' motion and preclude Defendant Andrx from raising a causation defense, either at the summary judgment or the trial stage, that is based upon the risk of patent infringement liability. If Andrx elects to waive its privilege, it shall file with the Court a written waiver of privilege claims. See Belmont Textile, 48 F. Supp. 2d at 523-24 (where the court allowed the defendant ten business days from the entry of its order to elect whether it would waive

---

[3]The discovery cut-off date is April 1, 2002.

6

its privilege and concluding that if it did not elect waiver it would not be allowed to rely on attorney advice as a defense to a claim of willful infringement).

This Court is not precluding Andrx from asserting its attorney-client privilege as to its patent counsel's communications. It is free to deny causation without relying on the argument that its fear of patent liability formed the basis for its business decision that it was too risky to enter the market in mid-1998. This Court's ruling also affirms the Magistrate Judge's decision that Andrx, on the record presented, had not yet waived its attorney-client privilege.

SO ORDERED.

Nancy G. Edmunds
U.S. District Judge

Dated: 1/9/02

7

## CERTIFICATE OF SERVICE

**Pursuant to Rule 77(d), Federal Rules of Civil Procedure, copies have been mailed to:**

Elwood S. Simon, Esq.
ELWOOD S. SIMON & ASSOCIATES
355 South Old Woodward Avenue
Suite 250
Birmingham, MI 48009

Stephen Lowey, Esq.
LOWEY, DANNENBERG,
 BEMPORAD & SELINGER PC
The Gateway, 11th Floor
One North Lexington Avenue
White Plains, New York 10601-1714

Joseph J. Tabacco, Jr., Esq.
BERMAN, DEVALERIO, PEASE & TABACCO
425 California Street, Suite 2025
San Francisco, CA 94104

Richard Drubel, Esq.
BOIES & SCHILLER
26 South Main Street
Hanover, NH 03755

Bruce E. Gerstein, Esq.
GARWIN BRONZAFT GERSTEIN & FISHER, LLP
1501 Broadway
New York, NY 10036

Scott E. Perwin, Esq.
KENNY NACHWALTER SEYMOUR ARNOLD
 CRITCHLOW & SPECTOR, PA
1100 Miami Center
201 South Biscayne Boulevard
Miami, FL 33131-4327

Joseph Rebein, Esq.
SHOOK, HARDY & BACON LLP
One Kansas City Place
1200 Main Street
Kansas City, MO 64105

Craig L. John, Esq.
DYKEMA GOSSETT PLLC
1577 North Woodward Avenue
Suite 300
Bloomfield Hills, MI 48304-2820

Louis M. Solomon, Esq.
SOLOMON ZAUDERER ELLENHORN
 FRISCHER & SHARP
45 Rockefeller Plaza
New York, NY 10111

Norman C. Ankers, Esq.
HONIGMAN MILLER SCHWARTZ & COHEN
32270 Telegraph Road, Suite 225
Bingham Farms, MI 48025-2457

Steve D. Shadowen
SCHNADER HARRISON SEGAL & LEWIS, L.L.P.
Suite 700, 30 North Third Street
Harrisburg, PA 17101-1713

Paul F. Novak
Assistant Attorney General
CONSUMER PROTECTION DIVISION
670 G Mennen Williams Building
Lansing, MI 48913

Jay Himes
Bureau Chief, Antitrust Bureau
OFFICE OF THE NEW YORK ATTORNEY GENERAL
120 Broadway
New York, NY 10271-0332

David L. Douglas
PORTER WRIGHT MORRIS & ARTHUR
1919 Pennsylvania Avenue N.W.
Washington, DC 20006-3434

JUDICIAL PANEL MULTIDISTRICT LITIGATION
Thurgood Marshall Federal Judiciary Building
Room G-255 North
One Columbus Circle, N.E.
Washington, D.C. 20002-8004

_____
Deputy Court Clerk

1/9/02
_____
Date